UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ULLICO CASUALTY COMPANY,

  Plaintiff,

    v.

ABBA SHIPPING LINES, INC., *et al.*,

  Defendants.

Civil Action No. 11-1817 (CKK)

**MEMORANDUM OPINION**
(September 16, 2012)

Plaintiff Ullico Casualty Company filed suit against Defendants Abba Shipping Lines, Inc. and Donna Travano, alleging breach of a General Indemnity Agreement, and seeking damages in the amount of $75,000, in addition to a request for attorney's fees as required by the agreement. Defendant Donna Travano filed for bankruptcy before being served in this matter. Status Report, ECF No. [10]. The Clerk of Court entered a default as to Abba Shipping Lines on December 27, 2011. Presently before the Court is Plaintiff's [11] Motion for Default Judgment as to Abba Shipping Lines. For the reasons stated below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. Plaintiff's motion is GRANTED as to $75,000 for collateral security and attorney's fees in the amount of $39,148.58. Plaintiff's motion is DENIED as to its request for attorney's fees in the amount of $3,788.

**I. BACKGROUND**

Plaintiff Ullico Casualty Company ("Ullico") is a corporation based in Washington, D.C. that engages in the sale and issuance of surety bonds, including Ocean Transportation Intermediary ("OTI") bonds. Compl., ECF No. [1], ¶ 5. Defendant Abba Shipping Lines, Inc. ("Defendant") is

a Florida corporation that operated as an ocean transportation intermediary. *Id.* at ¶ 8. Plaintiff issued an OTI bond to the Defendant on October 27, 2009, effective December 14, 2009, in the amount of $75,000. *Id.* at ¶¶ 11-12. Donna Travano signed the bond in her capacity as the President of Abba Shipping Lines. *Id.* at ¶ 11. The value of the OTI bond was available as payment for damages on claims against Defendant resulting from Defendant's transportation-related activities. Pl.'s Ex. A (OTI Bond Agreement) at 1-2. Plaintiff, as surety, and Abba Shipping Lines, as principal, signed a General Indemnity Agreement ("GIA"), dated October 27, 2009, in favor of the Plaintiff. Compl. ¶ 14; Pl.'s Ex. B (GIA) at 1. Donna Travano and Victor Del Castillo signed the GIA as indemnitors. Pl.'s Ex. B at 10. In the agreement, Defendant agreed to "exonerate Surety on any Bond and reimburse Surety in full for any Loss." *Id.* at 2. Defendant further agreed that, at Plaintiff's request, Defendant would deposit collateral with Plaintiff as security against possible loss or liability. *Id.* at 3.

In June, 2010, Defendant contracted with Shipco, Inc. to transport cathode ray tube televisions from Nashville, Tennessee to Tin Can Island in Nigeria. Compl. ¶ 18. Despite failing to obtain the necessary permits to import the televisions into Nigeria, Abba Shipping Lines transported the cargo to Nigeria. *Id.* at ¶ 24. The cargo was rejected by the Nigerian port authorities, returned to the United States, and destroyed. *Id.* at ¶ 26. On June 7, 2011, Shipco commenced an action against Plaintiff, as the surety of the OTI bond, and the Defendant in the District Court for the Southern District of Florida ("Florida lawsuit"). *Shipco Transport, Inc. v. Abba Shipping Lines, Inc.*, No. 11-22055 (S.D. Fla. filed June 7, 2011); Compl. ¶¶ 1, 28. The Defendant did not answer the Florida lawsuit. Compl. ¶ 29. On June 17, 2011, Plaintiff sent a demand letter to Defendant, requesting that Defendant post collateral in the amount of $75,000,

pursuant to the terms of the GIA. *Id.* at ¶ 30; Pl.'s Ex. C (Demand Letters) at 7, 11. Defendant failed to respond to Plaintiff's demand for collateral, and Plaintiff commenced the present action on October 14, 2011. Compl. ¶ 6. Defendant failed to answer the complaint, and the Clerk entered a default on December 27, 2011. Entry of Default, ECF No. [8]. Plaintiff filed the present motion on February 10, 2012, seeking (1) damages in the amount of $75,000; and (2) attorney's fees in the amount of $42,936.58, plus interest and costs. Pl.'s Mot. at 24. Defendant failed to file a response to the motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's request for a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." After a default has been entered by the Clerk, a party may move the court for a default judgment. Fed. R. Civ. P. 55(b)(2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Where, as here, there is a complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Auxier Drywall*, 531 F. Supp. 2d at 57 (internal quotation marks omitted). The Clerk of the Court entered a default as to Abba Shipping Line's, therefore the factual allegations in the Complaint are taken as true. *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C.2002). The Court finds that

Plaintiff's Complaint sufficiently alleges facts to support their claims. The Plaintiff is thus entitled to default judgment as to Defendant's liability for its failure to post collateral as required by the General Indemnity Agreement and Defendants' liability for a portion of Plaintiff's attorneys fees.

While the entry of default establishes the Defendant's liability, the Court is required to make an independent determination of the amount of damages to be awarded, unless the amount of damages is certain. *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 94 (D.D.C. 2011). In instances where the amount of damages is not certain, the court may hold a hearing, but is not required to do so as long as there is a basis for determining damages for purposes of the default judgment. *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160 (D.D.C. 2009). In making an independent determination, "the court may rely on detailed affidavits or documentary evidence." *Breaking the Chain Found., Inc. v. Capitol Educ. Supp., Inc.*, 589 F. Supp. 2d 25, 28 (D.D.C. 2008) (quoting *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)).

### III.  DISCUSSION

In support of its motion for default judgment, the Plaintiff submitted the OTI bond, the GIA, the Demand Letters sent to the Defendant, and an affidavit from Plaintiff's attorney Mr. James Gorman. Pl.'s Exs. A-D; Gorman Aff. In light of these exhibits and the factual allegations in the Complaint, the Court finds Defendants are entitled to a judgment in the amount of $75,000 for breach of the GIA and $39,148.58 in attorney's fees.

  A. *Damages Pursuant to the General Indemnity Agreement*

Plaintiff first seeks damages in the amount of $75,000 as a result of Defendant's failure to comply with Plaintiff's demand to deposit collateral pursuant to paragraph 6.0 of the GIA. Pl.'s

Mot. ¶¶ 13, 24. The GIA provides that the Defendant's failure to deposit collateral when requested "shall cause irreparable harm to the Surety" and that "Surety should be entitled to injunctive relief for specific performance of the obligation of the Indemnitors to deposit…the amount demanded and [the Indemnitors] hereby waive any claims or defenses to the contrary." Pl.'s Ex. B ¶ 6.8. The agreement provides Plaintiff as Surety the option to demand Defendant deposit collateral equal to (1) the liability of Surety, if established, (2) the liability claimed or asserted against the Surety, or (3) the amount of any reserve established by the Surety, and any increase thereof, to cover any possibility of liability or loss. Pl.'s Ex. B ¶ 6.1. Pursuant to the GIA, Plaintiff sent demand letters to Donna Travano, Victor Castillo, and an attorney for Abba Shipping Lines seeking "immediate deposit of collateral in the amount of $75,000.00," the amount sought by Shipco in the Florida lawsuit. Pl.'s Ex. C at 1, 4, 11; *see also* Compl. ¶ 28, *Shipco Transport*, No. 11-22055 (S.D. Fla. June 7, 2011), ECF No. [1] (seeking judgment in the amount of $75,000 against Ullico). Based on this evidence, the Court is satisfied that Plaintiff has met its burden of establishing Defendant's liability under the GIA in the amount of $75,000.

   B. *Attorney's Fees*

  Plaintiff's motion also seeks attorney's fees in the amount of $42,936.58, plus interest and costs. Pl.'s Mot. ¶ 24. The GIA provides that Defendant, as principal, will "indemnify and hold the Surety harmless from and against any and all Loss, whether or not Surety will have paid sums in partial or complete payment thereof." Pl.'s Ex. B ¶ 2.0. The total amount of attorney's fees sought by the Plaintiff represents fees from three separate actions: (1) this action; (2) the Florida lawsuit; and (3) a bankruptcy action in U.S. Bankruptcy Court in the Northern District of Georgia regarding Victor Del Castillo ("Georgia lawsuit"). Pl.'s Mot.¶ 24; Pl.'s Ex. D ¶ 5 (Gorman Aff.).

> The GIA defines "loss" in relevant part as:
>
> Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, including fees and costs of attorneys, consultants, and other professionals, that Surety may incur as a result of issuing or procuring the issuance of any Bond . . . . Loss includes, without limitation…all fees, costs and expenses, including those of attorneys, consultants, or other professionals, incurred in connection with investigating, adjusting, paying, settling or litigating any claim, demand, suit, damages, judgment, and/or incurred in procuring or attempting to release from liability by Surety and/or incurred in enforcing this Agreement.

Pl.'s Ex. B ¶ 1.9. In other words, the terms of the GIA require the Defendant to indemnify Plaintiff for all attorney's fees resulting from the issuance of any Bond, litigating any claim relating to the Bond, and/or enforcing the GIA. *See id.*

The Gorman Affidavit indicates that the Plaintiff has incurred fees totaling $22,828.46 in connection with this matter, $16,320.12 in connection with the Florida lawsuit, and $3,788.00 in connection with the Georgia lawsuit. Pl.'s Ex. D ¶ 5. By defaulting, the Defendant has conceded its liability as to fees relating to this litigation and the Florida lawsuit. Compl. ¶¶ 45-46. However, the Complaint and Plaintiff's motion omit any reference to the Georgia lawsuit. The Plaintiff failed to offer any explanation as to how the default established the Defendant's liability for attorney's fees incurred by the Plaintiff in connection with the Georgia lawsuit. Accordingly, Plaintiff's request for attorney's fees shall be granted as to this case and the Florida lawsuit, but denied as to the Georgia lawsuit.

### IV.  CONCLUSION

For the reasons stated above, Plaintiff Ullico Casualty Company's [11] Motion for Default Judgment as to Abba Shipping Lines is GRANTED IN PART and DENIED IN PART. Plaintiff's motion is GRANTED as to $75,000 as collateral security and attorney's fees in the amount of $39,148.58 pursuant to the General Indemnity Agreement. Plaintiff's motion is DENIED as to its

request for attorney's fees in the amount of $3,788.  An appropriate Order accompanies this Memorandum Opinion.

                                       _/s/_
                                       **COLLEEN KOLLAR-KOTELLY**
                                       UNITED STATES DISTRICT JUDGE